**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Creative Tent Int'l Inc., | No. CV-15-8005-PCT-SMM |
| Plaintiff, | |
| vs. | **ORDER** |
| Bradley John Kramer and Mariann Joellen Kramer, | |
| Defendants. | |
| Bradley John Kramer, | |
| Counterclaimant, | |
| vs. | |
| Creative Tent Int'l Inc., | |
| Counterdefendant. | |

Pending before the Court is Plaintiff/Counterdefendant Creative Tent International Inc.'s ("CTI") motion to strike portions of Defendant/Counterclaimant Bradley Kramer's ("Defendant") counterclaim and motion to seal answer and counterclaim. (Doc. 10.) The matter is fully briefed. (Docs. 12, 13.) After review of the pleadings,[1] the Court will grant

---

[1] CTI has requested oral argument. The Court will not set oral argument on CTI's motion because both parties have submitted legal memoranda and oral argument would not aid the Court's decisional process. See e.g., Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.

1  CTI's motion.

2  ***Background***

3  CTI brought this lawsuit against Defendant, CTI's former Chief Executive Officer
4  ("CEO"). (Doc. 1, 1-1.)  CTI alleges that Defendant used the company credit card for
5  personal purchases without reimbursing CTI.  (Doc. 1-1 at 3.)  Based on these allegations,
6  CTI terminated Defendant's employment.  (Id.)  Subsequently, the parties entered into a
7  settlement agreement.  (Id. at 3-4.)  As part of the settlement agreement, Defendant executed
8  a promissory note to CTI promising to pay the settlement amount through installment
9  payments.  (Id. at 4-5.)  CTI's complaint alleges that Defendant breached the payment terms
10 of the settlement agreement; CTI seeks to enforce the settlement agreement and promissory
11 note.  (Id. at 4-7.)

12 Defendant answered and counterclaimed alleging that he was terminated for raising
13 his concerns about the structural integrity of CTI's designs and buildings, for attempting to
14 terminate CTI's outside engineer, and objecting to CTI gifting a large area maintenance
15 shelter to a foreign general.  (Doc. 3 at 5-8.)

16 CTI moves to strike certain paragraphs, ¶¶ 12, 13, 15, 16, and 17 from Defendant's
17 counterclaim, alleging that Defendant disclosed attorney-client and/or work product
18 privileged information belonging to CTI. (Doc. 10.) Defendant objects relying on the crime-
19 fraud exception to the attorney-client privilege.  (Doc. 12.)  CTI replies that Defendant's
20 allegations of fraud are insufficient to use the crime-fraud exception as a defense.  (Doc. 13.)

21 ***Standard of Review***

22 *Motion to Strike*

23 Under our District's Local Rules, a motion to strike may be filed in only two
24 situations: (1) when the motion to strike is authorized by statute or rule, or (2) when the
25 motion to strike seeks to strike a filing or submission because it is prohibited by statute, rule,
26 or court order. LRCiv 7.2(m)(1).

27 ───────────

28 1998).

- 2 -

*Attorney-Client Privilege*

As this case is based on diversity jurisdiction, a federal court sitting in diversity must apply the substantive law of the forum state. See KL Group v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987) (stating that "[t]he availability of the attorney-client privilege in a diversity case is governed by state law.") The Arizona attorney-client privilege for corporations in civil actions is found in A.R.S. § 12-2234(B). See Bickler v. Senior Lifestyle Corp., 266 F.R.D. 379, 381 (D. Ariz. 2010). The statute protects communications "between an attorney for a corporation" and "any employee, agent, or member" of the corporation. See A.R.S. § 12-2234(B).[2] Id.

The purpose of the attorney-client privilege is to encourage candid communications between client and counsel and protects not only the giving of professional advice, but also the giving of information to enable sound and informed legal advice. See Upjohn Co. v. United States, 449 U.S. 383, 390-91 (1981); Roman Catholic Diocese of Phx. v. Superior Ct., 204 Ariz. 225, 228, 62 P.3d 970, 973 (App. 2003) (stating that under A.R.S. § 12-2234, "any communications between an attorney and an employee or agent of the [organizational client], made for the purpose of providing legal advice or obtaining information to provide legal advice, are protected.")

---

[2] The full text of A.R.S. § 12-2234 provides:
A. In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. . . .
B. For purposes of subsection A, any communication is privileged between an attorney for a corporation . . . and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:
   1. For the purpose of providing legal advice to the entity or employer or to the employee, agent or member.
   2. For the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member.
C. The privilege defined in this section shall not be construed to allow the employee to be relieved of a duty to disclose the facts solely because they have been communicated to an attorney.

- 3 -

Arizona "has long recognized a 'crime-fraud' exception to the [attorney-client] privilege." Kline v. Kilne, 221 Ariz. 564, 573, 212 P.3d 902, 911 (App. 2009). The attorney-client privilege "takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." Id. (quoting Buell v. Superior Court of Maricopa Cnty., 96 Ariz. 62, 68, 391 P.2d 919, 924 (1964)).

*Discussion*

CTI, as the party invoking the privilege, carries the burden of establishing that confidential communications were disclosed. CTI argues that Defendant's counterclaim expressly reveals attorney-client communications that are protected confidential communications under Arizona law. (Doc. 10.) In support, CTI alleges that Defendant in his counterclaim disclosed the following:

> ¶ 12: "[Defendant] had multiple communications with CTI's attorneys at Squire Sanders . . . ."
> ¶ 13: "[Defendant] told Stafford . . . and that CTI's attorneys agreed."
> ¶ 15: "As part of that litigation, CTI's counsel, Vicki Nash . . . ."
> ¶ 16: "[Vicki] Nash told [Defendant] . . . . She also told [Defendant] . . ."
> ¶ 17: [Defendant] purporting to relay information from Vicki Nash.

(Id. at 4.) CTI contends that each of these instances involves Defendant as CTI's then-CEO seeking legal advice from CTI's attorney regarding information that Defendant subsequently disclosed in his counterclaim. (Id.) CTI further contends that Defendant had no authority to waive the privilege in his counterclaim because the authority to waive the privilege belonged to CTI not to its former CEO, citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985). (Id.)

Defendant contends that he consulted CTI counsel regarding ongoing and threatened fraud and illegal activities being committed by CTI through its owner. (Doc. 12 at 5.) Based on the crime-fraud exception, Defendant contends that to the extent any privilege attached to those communications, it was in his favor because he also received personal advice regarding his potential personal liability if CTI went forward as planned and Defendant failed to report the illegal and fraudulent activities. (Id.) Since he holds the privilege, Defendant

- 4 -

1 argues that he was free to waive the privilege and disclose the communications. (Id.)

2 It is undisputed that Defendant disclosed privileged attorney-client communications 3 in his answer and counterclaim. (Doc. 3 at 6-7.) The Court finds that Defendant did not have 4 the authority to waive the attorney-client privilege as to those communications. See 5 Commodity Futures Trading Comm'n, 471 U.S. at 349 (stating that "[d]isplaced managers 6 may not assert the privilege over the wishes of current managers, even as to statements that 7 the former might have made to counsel concerning matters within the scope of their corporate 8 duties."). The Court rejects Defendant's crime-fraud exception argument; Defendant did not 9 consult CTI corporate counsel for advice that would serve him in the commission of a fraud. 10 See Kline, 221 Ariz. at 573, 212 P.3d at 911.

11 Next, at issue is whether the Court will seal the judicial record due to the presence of 12 privileged communications between Defendant and CTI counsel. Because there is a strong 13 presumption in favor of public access to court documents, a party seeking to seal a judicial 14 record "bears the burden of overcoming this strong presumption by meeting the 'compelling 15 reasons' standard." Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 16 2006) (internal citation omitted). A "party must articulate compelling reasons supported by 17 specific factual findings that outweigh the general history of access and the public policies 18 favoring disclosure." Id. at 1178–1179 (internal quotations omitted). The Court finds that 19 the presence of privileged attorney-client communications is a compelling reason to seal the 20 subject judicial record. See Triquint Semiconductor, Inc. v. Avago Technologies Ltd., No. 21 CV 09-1531, 2011 WL 6182346, *5 (D. Ariz. Dec. 13, 2011).

22 Accordingly,

23 **IT IS HEREBY ORDERED** granting CTI's motion to seal Defendant's Answer and 24 Counterclaim. (Doc. 10.) The Clerk of Court shall place under seal Defendant's Answer and 25 Counterclaim. (Doc. 3.)

26 **IT IS FURTHER ORDERED** that by **Friday, August 14, 2015,** after prior 27 consultation with CTI, Defendant shall file a redacted version of his Answer and
28 ///

1 Counterclaim omitting the confidential attorney-client communications.

2 DATED this 4th day of August, 2015.

_____
Stephen M. McNamee
Senior United States District Judge

- 6 -